IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

UNITED STATES DEPARTMENT OF STATE, )
2201 C Street, N.W.                              )
Washington, D.C. 20520,                      )
                                                            )
and                                                         )
                                                            )
UNITED STATES AGENCY FOR            )
    INTERNATIONAL DEVELOPMENT,  )     Civ. Action No. 18-0041
1300 Pennsylvania Avenue, N.W.           )
Washington, D.C. 20523                       )
                                                            )
        Plaintiffs,                            )
                                                            )
    v.                                                     )
                                                            )
GREGORY E. PICUR,                             )
Saudi ARAMCO, PO Box 5308             )
Dhahran, 31311                                     )
Saudi Arabia                                         )
                                                            )
        Defendant.                           )
_____)

## COMPLAINT

      Plaintiffs, the United States Department of State (the Department) and the United States

Agency for International Development (USAID), by their undersigned attorneys, bring this

action for judicial review under section 1110 of the Foreign Service Act of 1980, 22 U.S.C.

§ 4140(a), and the Administrative Procedure Act, 5 U.S.C. § 706, of a Foreign Service Grievance

Board (FSGB) decision dated July 11, 2017 (and corrected on August 16, 2017), regarding

Defendant's grievance appeals in two consolidated cases (FSGB Case No. 2013-031R and FSGB

Case No. 2016-030) concerning the calculation of Defendant's retirement annuity and special

differential pay.  The FSGB ordered that the Department calculate Defendant's retirement

annuity under the Foreign Service Retirement and Disability System (FSRDS) contrary to law

and has improperly limited the Secretary's discretion with respect to the payment of special differentials to Foreign Service officers, also contrary to law.  The FSGB's findings and conclusions are arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

For their complaint, the plaintiffs allege as follows:

## Jurisdiction and Venue

1.  This action arises under the Foreign Service Act of 1980, as amended, 22 U.S.C. §§ 3901, *et seq.*

2.  This Court has jurisdiction over the subject matter pursuant to 22 U.S.C. §4140(a) and 28 U.S.C. §§ 1331 and 1345.

3.  Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

## Parties

4.  Plaintiff United States Department of State is an executive agency of the Government of the United States within the meaning of 5 U.S.C. § 701(b).

5.  Plaintiff United States Agency for International Development is an executive agency of the Government of the United States within the meaning of 5 U.S.C. § 701(b).

6.  Defendant Gregory Picur was at all times relevant to this action, a former Civil Service employee of the Internal Revenue Service (IRS), a Foreign Service employee of the Office of the Inspector General of USAID ("USAID OIG"), and a Foreign Service annuitant under FSRDS.

### **The Statutory Framework**

7.  The statutory framework governing the FSGB is set forth at 22 U.S.C. §§ 4131, *et*

*seq.*, and is extended to designated Foreign Affairs agencies, including the Department and

USAID OIG, under 22 U.S.C. § 4131(c).  Under the Foreign Service Act of 1980,

> [T]he term "grievance" means any act, omission, or condition subject to the
> control of the Secretary which is alleged to deprive a member of the Service who
> is a citizen of the United States . . . of a right or benefit authorized by law or
> regulation or which is otherwise a source of concern or dissatisfaction to the
> member . . . .

22 U.S.C. § 4131(a)(1).  A former member of the Foreign Service may only file a grievance with

respect to an "alleged denial of an allowance, premium pay, or other financial benefit to which

the member claims entitlement under applicable laws and regulations."  22 U.S.C. § 4132,

4131(a)(1)(G).

8.  The Foreign Service Act of 1980 permits "[a]ny aggrieved party" to obtain judicial

review of the final action of the FSGB on any grievance in district court in accordance with the

standards set forth in the judicial review provisions of the Administrative Procedure Act.  22

U.S.C. § 4140(a).

9.  Section 806 of the Foreign Service Act of 1980, as amended, 22 U.S.C. § 4046,

provides for the computation of annuities under the FSRDS.

10.  Section 412 of the Foreign Service Act of 1980, as amended, 22 U.S.C. § 3972,

provides the "Secretary" with broad discretionary authority to pay special differentials to

"Foreign Service officers who are required . . . to perform additional work on a regular basis in

substantial excess of normal requirements."  As provided in section 102 of the Foreign Service

Act of 1980, 22 U.S.C. § 3902(10), the "'Secretary' means the Secretary of State, except that . . .

with reference to the exercise of functions under [the Act] with respect to any agency authorized

3

by law to utilize the Foreign Service personnel system, such term means the head of that agency." USAID is authorized by law to utilize the Foreign Service personnel system. 22 U.S.C. § 3922(a)(1). In 1996, the USAID Administrator delegated to the USAID Inspector General all personnel authorities under the Foreign Service Act of 1980 for members of the Foreign Service assigned to the Inspector General and directly involved in audit or investigation functions.

11. The Administrative Procedure Act empowers a Court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## Statement of Claims

12. Defendant was first employed by the IRS in November 1983 as a GS-4 Accounting Clerk, a non-law enforcement Civil Service position. He was a participant in the Civil Service Retirement System (CSRS).

13. On July 8, 1984, Defendant was appointed by the IRS as GS-5 Criminal Investigator, a law enforcement Civil Service position. He continued to be a participant in the CSRS.

14. On August 21, 1994, Defendant was appointed by USAID OIG as an Inspector in the Foreign Service of USAID OIG. He received tenure in 1998, became a Foreign Service Officer (Inspector), and was promoted to the FS-03 level. Defendant's title changed from Inspector to Criminal Investigator in 2007.

15. Defendant became a participant in the FSRDS when he was appointed by USAID OIG as an Inspector in the Foreign Service in 1994. He was later promoted to the FS-02 level, then the FS-01 level.

16. Defendant retired from USAID OIG on May 3, 2010.

17.   While employed by USAID OIG, Defendant received special differentials under section 412 of the Foreign Service Act of 1980, as authorized by the Inspector General (IG) of USAID pursuant to his delegated authority.  The USAID IG authorized special differentials to be paid to its Foreign Service officer criminal investigators.  When the USAID IG increased the amount of special differential to be paid to USAID OIG Foreign Service officer criminal investigators from 15% to 18% of basic pay in 2006, he also directed, in a Decision Memorandum dated March 31, 2006, to apply a bi-weekly pay cap to receipt of basic pay and special differentials, to effect rough parity with the pay of Civil Service criminal investigators also employed by USAID OIG, whose pay is subject to a biweekly pay cap under 5 U.S.C. § 5547.  The National Finance Center, which processes payroll for USAID including its Office of Inspector General, however, did not apply this bi-weekly pay cap to USAID OIG's Foreign Service officer criminal investigators until 2013, so Defendant's special differential pay was not capped (in accordance with Decision Memorandum) while he was employed with USAID OIG.

18.   The Department is responsible for the administration of the FSRDS and the computation of annuities under the FSRDS.  Upon Defendant's retirement, the Department initially determined Defendant's  high-3 average basic salary, for annuity computation purposes, to be $149,885, finding that, to the extent that he received special differential, it was to be capped commensurate with the bi-weekly pay cap imposed in the March 31, 2006 USAID OIG Decision Memorandum.  The Department initially also applied a 2.5% annuity multiplier in the computation, which the Department later determined to be incorrect (as discussed in ¶ 24).

19.   Defendant filed a grievance with the Department, which was received on March 12, 2012, alleging that his annuity under the FSRDS was not properly calculated because not all the

special differential pay that he received while employed by USAID was included as part of "basic pay" in his annuity computation.

20.  The Department denied the grievance in a decision dated May 10, 2013, finding that only the special differential up to the bi-weekly pay cap could be included in the determination of his high-3 average salary.

21.  Defendant appealed the denial of his grievance to the FSGB on July 11, 2013 (FSGB Case No. 2013-031).  The FSGB issued a decision on July 1, 2014, denying his grievance.

22.  Defendant sought judicial review of the FSGB decision by filing a complaint in the District Court for the District of Columbia on August 29, 2014 (Civil Action No. 14-1492).

23.  In a Memorandum Opinion dated September 11, 2015, the Court vacated the FSGB decision and held that the Department does not have statutory authority to adjust an FSRDS participant's high-3 average basic salary when calculating an annuity, given that USAID had not executed the 2006 bi-weekly pay cap before Defendant retired.  The Court remanded the matter back to the FSGB.

24.  Following remand, USAID OIG corrected Defendant's official personnel actions to apply the bi-weekly pay cap to his salary and provided the corrected personnel actions to the Department.  In the course of recalculating Defendant's annuity, the Department determined that the operative provision regarding the annuity calculation was in fact 22 U.S.C. § 4046(a)(1), as the District Court stated in its September 11, 2015, Memorandum Opinion.  22 U.S.C. § 4046(a)(1) provides that "[t]he annuity of a participant shall be equal to 2 percent of his or her average basic salary for the highest 3 consecutive years of service multiplied by the number of years, not exceeding 35, of service credit obtained in accordance with sections 4056 and 4057 of this title[.]"  22 U.S.C. § 4046(a)(1).  The Department's Office of Retirement determined that

there was an error regarding the percentage multiplier used in the Department's prior annuity calculation.  The Department had used a 2.5% multiplier for the first 20 years of service as Defendant was coded in the retirement system as "Foreign Service Retirement and Disability System (FSRDS) Law Enforcement."  By law, however, Defendant only is eligible for the 2% multiplier for all of his years of service because he is covered under 22 U.S.C. § 4046(a)(1).  In order to receive the 2.5% multiplier, Defendant would have to be covered under paragraph (a)(2) of 22 U.S.C. § 4046, which is applicable to those who were appointed to a law enforcement position prior to January 1, 1984.  Defendant is not covered under this subsection because he was not appointed to a law enforcement position until July 3, 1984.  The Department informed Defendant of this amended annuity calculation by letter dated January 7, 2016.

25.  Defendant filed a second grievance concerning his amended annuity calculation claiming, *inter alia*, that: (i) all of the uncapped special differential pay he received should have been included by the Department as part of his average basic salary for annuity calculation purposes, challenging the use of what he referred to as "altered" personnel records in his annuity calculation; and (ii) the 2.5% multiplier should apply to his annuity calculation.  This grievance was received by the Department on February 9, 2016.  The Department denied the grievance in a decision letter dated April 8, 2016.  Defendant appealed this decision to the FSGB on June 2, 2016 (FSGB Case No. 2016-030).

26.  The FSGB issued a Decision on Remand in Case No. 2013-031 on February 23, 2016, without affording the parties the opportunity for further briefing or addressing the Department's January 7, 2016, amended annuity calculation.  In its February 23, 2016 Decision, the FSGB reversed its earlier July 1, 2014 Decision upholding the Department's calculation, and

ordered that the Department re-calculate Defendant's annuity based on the actual pay Defendant received (including uncapped special differential) while employed by USAID OIG.

27.   The Department moved for reconsideration of the FSGB's February 23, 2016 decision on March 14, 2016.  By Order dated July 6, 2016, the Board agreed to reconsider its decision on the merits, ordered that Defendant's two grievance appeals be consolidated, and requested that USAID OIG be joined as a party to the consolidated case.  After further briefing, the FSGB denied the Department's Motion for Reconsideration by decision dated July 11, 2017. The FSGB issued a corrected decision on August 16, 2017.  In its July 11, 2017 decision (as corrected on August 16, 2017), the FSGB addressed Defendant's consolidated grievance appeals and ordered (a) that the Department apply a 2.5% multiplier in Defendant's annuity calculation notwithstanding 22 U.S.C. § 4046(a)(1), and (b) that all the special differential pay that Defendant received – including special differential pay in excess of the bi-weekly pay cap – be included in his high-3 average basic salary.  The Board also held that USAID OIG did not have authority to impose a bi-weekly pay cap on Defendant's receipt of special differentials.

## Count I
(Foreign Service Act)

28.   The allegations contained in paragraphs 1 through 27 are hereby incorporated by reference.

29.   The FSGB's decision dated July 11, 2017 (as corrected on August 16, 2017) was arbitrary, capricious, and not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A) in concluding that Defendant was entitled to an annuity calculated using a 2.5% multiplier under section 806(a)(2) of the Foreign Service Act, 22 U.S.C. § 4046(a)(2).  The FSGB's decision ordering the Department to pay a retirement annuity to Defendant contrary to section 806(a)(1) of the Foreign Service Act, 22 U.S.C. § 4046(a)(1), and instead expressing its own beliefs and

presumptions at to what Congress should have stated in the statute , is contrary to the language of the Foreign Service Act and contrary to law.

## Count II
(Foreign Service Act)

30.   The allegations contained in paragraphs 1 through 29 are hereby incorporated by reference.

31.   The FSGB's decision dated July 11, 2017 (as corrected on August 16, 2017) was arbitrary, capricious, and not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A) in concluding that Defendant was entitled to have uncapped special differential included in his annuity calculation under section 806 of the Foreign Service Act, 22 U.S.C. § 4046.

## Count III
(Foreign Service Act)

34.   The allegations contained in paragraphs 1 through 31 are hereby incorporated by reference.

35.   The FSGB's decision dated July 11, 2017 (as corrected on August 16, 2017) was arbitrary, capricious, and not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A) in finding that USAID OIG did not have authority to cap special differential at a level commensurate with the bi-weekly pay cap.

36.   The FSGB's decision dated July 11, 2017 (as corrected on August 16, 2017) was arbitrary, capricious, and not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A) in limiting the Secretary's discretion to pay special differentials under section 412 of the Foreign Service Act, 22 U.S.C. § 3972 and finding that USAID OIG was not authorized to subject Defendant to a limitation on special differential pay at a level commensurate with the bi-weekly pay cap under 5 U.S.C. 5547.

9

## Prayer for Relief

WHEREFORE, plaintiffs request:

1.  That the Court enter a judgment vacating the FSGB decision dated July 11, 2017 (as corrected on August 16, 2017) and set aside the relief granted by the FSGB.

2.  That the Court reverse the decision of the FSGB and order the calculation of Defendant's annuity under the FSRDS in accordance with section 806(a)(1) of the Foreign Service Act of 1980, which requires the 2% multiplier and does not provide for the inclusion of any special differential in determination of his basic pay for annuity calculation purposes.3.  That the Court reverse the decision of the FSGB and find that the decision of the Inspector General of USAID OIG to subject Defendant to a limitation on special differential pay to a level commensurate with the Title 5 bi-weekly pay cap was within his authority under section 412 of the Foreign Service Act of 1980, as amended, 22 U.S.C. § 3972.

3.  That the Court grant such other and further relief as may appear just and proper in this action.

> Respectfully submitted,
>
> JESSIE K. LIU, D.C. BAR # 473845
> United States Attorney
> for the District of Columbia
>
> DANIEL F. VAN HORN, D.C. Bar #924092
> Civil Chief
>
> By: /s/ Alexander D. Shoaibi
> ALEXANDER D. SHOAIBI, D.C. Bar #423587
> Assistant U.S. Attorney
> 555 Fourth St., N.W.
> Room E4218
> Washington, D.C. 20530
> (202) 252-2511
> Alexander.d.shoaibi@usdoj.gov